The **TRAVELERS FIRE INSURANCE COMPANY**, a corporation, and The Western Fire Insurance Company, a corporation, Plaintiffs in Error,

v.

**J. C. WRIGHT, J. B. Wright, J. C. Wright and J. B. Wright, d/b/a Wright Motor Company, and W. M. Wright, Administrator of the Estate of J. C. Wright, Deceased, Defendants in Error.**

No. 37536.

Supreme Court of Oklahoma.

Feb. 25, 1958.

Hanson & Green, by Clarence P. Green, Oklahoma City, Haskell Paul, Pauls Valley, for plaintiffs in error.

Ross & Ross, Dwight Tolle, O. C. Craig, Okema, Bill Wilson, Pauls Valley, for defendants in error.

JACKSON, Justice.

This is an action by J. B. Wright and J. C. Wright to recover $20,000 on two fire insurance policies. The defendant fire insurance companies defended on the ground that the fire that destroyed plaintiffs' property was deliberately caused by the plaintiff, J. B. Wright, with the intent of cheating and defrauding defendants. Defendants alleged and proved that plaintiffs, J. B. Wright and J. C. Wright, were partners at all times involved herein. The jury returned a verdict for plaintiffs in the amount of $20,000 upon which the court entered judgment resulting in this appeal.

Defendants called Wm. Holland Eppler and Albert Brown as witnesses. Each witness claimed his constitutional privilege against self-incrimination and refused to testify. The claim of each was granted by the trial court. Defendant then offered certified transcripts of testimony given by each witness in the trial of a criminal case wherein one of the plaintiffs herein, J. B. Wright, was charged with the crime of arson in connection with the fire involved in the instant case. Such testimony was to the effect that J. B. Wright, with the aid and assistance of the two named witnesses, actively procured the burning of the property. Each offer was rejected by the trial court. The court reporter who took the

evidence in the criminal case testified as to the correctness of his transcript, the nature of the case in which the testimony was taken, and the parties involved. In addition to offering the transcript, defendants offered to have the reporter read same in evidence.

If the defendants had merely offered the certified transcripts, without more, such offer would have been subject to the provisions of 20 O.S.1951 § 115, governing the admission in evidence of certified transcripts. But the offer to prove the former testimony by the court reporter was not in any way subject to or restricted by the provisions of such statute for the reason that said statute is not a limitation upon the use of a court reporter's notes, but an extension thereof. In Oklahoma Ry. Co. v. Boles, 30 Okl. 764, 120 P. 1104, 1105, one party offered a certified transcript of former testimony in evidence. It was objected to on the grounds that it was not admissible as a deposition, because it was not filed one day before trial. (The statute governing admission of certified transcripts appears to limit the use of such transcripts to cases where a deposition might be used). In the cited case the court said:

"Even though plaintiff was correct in the contention that the transcript was incompetent because not filed one day before trial, yet it was certainly competent to prove by the stenographer's notes the testimony of the witness at a former trial (the stenographer being present and ready to testify as to the correctness of the notes) under the rule that a witness may testify concerning memoranda made by him, which he knows to have been correct at the time it was made, though he has no independent recollection of the facts stated in the memoranda."

See also in this connection Atchison, T. & S. F. Ry. Co. v. Baker, 37 Okl. 48, 130 P. 577; and King Auto Service v. Hodges, 143 Okl. 260, 288 P. 483. It will thus be seen from our statement of the facts herein that

the defendants attempted to make use of both the statutory and common-law rules governing the methods to be employed in presenting evidence given at a former trial. It is not necessary for us to decide whether the certified transcript, without more, was admissible, under the statute (Sec. 115, supra), and we do not so decide. We do decide that if the testimony given in the criminal case was admissible at all in the instant case the defendants met the preliminary *procedural* requirements of the common law for the admission of such testimony. We must now determine if the former testimony was admissible under the common-law rules of evidence.

In 20 Am.Jur. § 686, at page 580, it is said that the real basis for the admission of testimony given by a witness at a former trial is to prevent the miscarriage of justice where the circumstances of the case have made it unreasonable and unfair to exclude the same, and where the court perceives no need for the introduction of testimony taken at a former trial of the same issue, such evidence is properly excluded. See also Wigmore on Evidence, Vol. 5, page 148.

There is a difference of opinion upon the right to use in a civil case the testimony given in a criminal case by a witness whose testimony is no longer available. 20 Am. Jur. Evidence § 694, p. 585. Indeed this court has had difficulty with this question. In Ray v. Henderson, 44 Okl. 174, 144 P. 175, handed down in 1914, without dissent, it was held in the first paragraph of the syllabus as follows:

"The testimony of a witness, since deceased, given at an examining trial before a justice of the peace on the charge of felonious assault, may be used against the defendant, in a civil suit against him, for damages by the person assaulted."

In Concordia Fire Insurance Co. v. Wise, Adm'r, 114 Okl. 254, 246 P. 595, 46 A.L.R. 456, handed down in 1926, with a divided court, 5 to 3, we overruled Ray v. Henderson, supra, and held in the fifth paragraph of the syllabus as follows:

"In an action to recover on a fire insurance policy, the testimony of a witness who has since died, given in the criminal proceedings against the insured for burning the building covered by insurance, is· properly excluded."

Since our decisions are binding upon trial courts and litigants, we appreciate the necessity of establishing a rule and following it. However, if we have established the wrong rule, or if our rule is unsound, we should avail ourselves of the first opportunity to correct it lest we perpetuate the wrong. In 142 A.L.R. 673, there appears an Annotation on the question involved herein. At page 701 of the Annotation the author states that he considers it unfortunate that we overruled Ray v. Henderson in the Concordia case.

It is interesting to note that in the Concordia case we followed the rule laid down by the Supreme Court of Illinois (McInturff v. Insurance Co. of North America, 248 Ill. 92, 93 N.E. 369), *believing it to be the majority rule.* However, in 46 A.L.R. (published subsequent to the Concordia decision) there appears an Annotation on page 463, under· the subject "Use in civil case of testimony given in criminal case by witness no longer accessible", wherein it is said:

"The weight of authority seems to be to the effect that, on a proper showing of inability to procure the attendance of a witness at the trial of a civil case, his testimony given in a criminal prosecution involving the same transaction is admissible against the person who was defendant therein."

The author lists decisions from five states, Georgia, Iowa, New York, South Dakota, and Wisconsin, as constituting the weight of authority. Three states, Illinois, Pennsylvania, and Oklahoma (citing the Concordia case), are listed as following the minority view.

It is quite often stated that before testimony can be taken from a former trial or proceeding and introduced in a subsequent trial there must be (1) an inability

to obtain the testimony of the witness; (2) there must have been an opportunity to cross-examine the witness in the former trial; (3) there must be an identity, or substantial, identity of issues, and (4) parties. These requirements are recognized in the Concordia case. The primary difficulty arises when we attempt to determine if there is an identity of issues. In a Pennsylvania decision, Harger v. Thomas, 1862, 44 Pa. 128, 84 Am.Dec. 422, cited in 46 A.L.R. 463, supra, heavy stress was laid upon the conclusion that a criminal prosecution is not an action, and that the issue in a criminal case is between the government and the prisoner on the question of guilt, and not a question of property. In the Illinois case, McInturff v. Insurance Co. of North America, supra, it was pointed out that the issue in a criminal case is "guilt" and in a civil case the issue is "property." The "issue" as defined by those courts appears to us to be more in the nature of the ultimate issue, or result sought to be obtained by the action or proceeding. In our view it would be more accurate to consider the "issue" as that issue sought to be established by the witness when he testified in the criminal case and weigh it against the issue sought to be proved by the witness in the civil case.

In the case before us, it appears that Eppler and Brown testified in the criminal case to establish the issue of whether J. B. Wright procured the burning of the building. Affirmative proof of this issue was necessary to establish his guilt. In the civil case before us the issue is whether J. B. Wright procured the burning of the building. Affirmative proof of this issue is necessary if defendants herein are to prevail. It may be that there were other issues sought to be proved by other witnesses in the instant case, but the issue sought to be established by Eppler and Brown in both the criminal and civil cases was whether J. B. Wright procured the burning of the building.

From a re-examination of our former decisions, and decisions from other juris-

dictions, it becomes apparent that it is impossible to write a rule that will fit all situations. As pointed out in 20 Am.Jur., p. 580, supra, the reason for admitting testimony given at a former trial is to prevent a miscarriage of justice. It naturally follows that testimony from a former trial should not be admitted if to do so would result in a miscarriage of justice.

■ As a general proposition we think testimony from a criminal case can be introduced in a subsequent civil case where it appears that it is impossible to obtain the testimony of the witness who testified in the criminal case; that there was an opportunity to cross-examine the witness by the party against whom the testimony is sought to be used in the civil case, or by one whose motive and interest in cross-examining was the same; and that there is an identity of issues. As will be hereinafter shown, identity of *all* parties is not an independent requirement in all cases.

As a further safeguard the trial court should give the objecting party an opportunity to point out wherein it would be unjust to admit such testimony. We have examined the transcript of the testimony given by the witnesses Eppler and Brown, in the criminal case and find nothing therein indicating that it would have been unjust to admit the testimony against the plaintiffs in this case.

■ From our examination of the record herein it appears that the trial court erred in refusing to let the court reporter relate the testimony given by Eppler and Brown in the criminal case. It also follows that the rule as expressed in the fifth paragraph of the syllabus in Concordia Fire Insurance Co. v. Wise, 114 Okl. 254, 246 P. 595, 46 A.L.R. 456, must be, and accordingly is, overruled insofar as in conflict with the views herein expressed.

Is it material that one of the plaintiffs herein, J. C. Wright, was not a party defendant in the criminal case, and apparently did not participate in the alleged burning of the insured property? We think not.

· The insurance policies herein, on which recovery is sought, provide that the defendant companies will not be liable for loss by fire caused by neglect of the insured to use all reasonable means to save and preserve the property at and after a loss. In 29 Am.Jur. Insurance § 1028, pp. 777 and 778, it is said:

"On the other hand, an innocent partner cannot recover on an insurance policy upon partnership property wilfully burned by his copartner, especially where the policy provides that the insured shall use all reasonable means at and after a fire to preserve the property."

This rule of law is supported by cases cited in American Jurisprudence and in an Annotation in 27 A.L.R. beginning at page 948.

Is it important that J. C. Wright did not have an opportunity to cross-examine in the criminal case? J. B. Wright had the same motive and interest in cross-examining the witnesses in the criminal case as would J. C. Wright in the instant case. The issues were the same in both cases. J. B. Wright had, and has, the same property interest as that of J. C. Wright. In 142 A.L.R. at page 696, the author quotes from 5 Wigmore on Evidence, 3rd ed. § 1368, as follows:

" * * * The principle, then, is that where the interest of the person was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end. Thus the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue. * * * It ought then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has."

The author of the Annotation concludes that the argument and position taken by Wigmore is supported by a considerable number of cases from various jurisdictions and cites the cases in support of that rule. We conclude that J. B. Wright's opportunity to cross-examine the witness in the criminal case on the same issue, and with the same interest and motive that J. C. Wright would have in the instant case, satisfies the rule of substantial identity of issues and parties and opportunity for satisfactory cross-examination.

From the foregoing it is seen that the question of substantial identity of parties is important only with regard to the parties as against whom such testimony is offered; therefore the fact that the state was J. B. Wright's adversary in the first case rather than the insurance companies is immaterial. Such fact has no bearing upon the question of whether there has been an adequate opportunity to thoroughly sift and test such testimony by cross-examination.

In view of our conclusion to remand for new trial, we think it is necessary that we give attention to other questions presented in the briefs which undoubtedly will be presented when the case is retried.

■ We have herein held that the court reporter should be permitted to relate and testify as to what both witnesses testified to in the criminal trial. This conclusion is upon the assumption that both witnesses, at the subsequent trial of this case, will be subpoenaed and will claim their privilege against self-incrimination, and that their claims will be granted. If so, their testimony is as unavailable as if they were dead. Exleton v. State, 30 Okl.Cr. 224, 235 P. 627.

■ From defendants' motion for new trial on the ground of newly discovered evidence it appears that the witness Brown had been granted immunity from prosecution before he testified in the criminal case. This fact was unknown to the trial judge and to counsel for defendants at the time this witness was sworn to testify in the instant case. However, it also appears from the motion for new trial that the

witness Brown, subsequent to the trial of this case, swore under oath that his testimony in the criminal case was false.

In Scribner v. State, 9 Okl.Cr. 465, 469, 132 P. 933, in the fourth paragraph of the syllabus, it was held:

"Before any person can secure immunity under section 27 of the Bill of Rights of our Constitution on account of incriminatory evidence, given by him as a witness before a grand jury, or in any court, such witness must have testified under an agreement made with the prosecuting attorney, approved by the court, or such witness must have claimed the privilege of silence, which was by the court denied, and such witness must have been compelled by the court to so testify. *Immunity will not then be granted unless such witness acts in good faith with the state, and testifies truthfully and fully as to all material facts within his knowledge touching the matter under inquiry.*" (Emphasis supplied.)

Thus it appears that if Brown did not testify truthfully in the criminal case he is still subject to prosecution for the crime of arson. In this connection we observe that the rule announced seems proper where as in the instant case the immunity is obtained under a contract or agreement, but would be worthy of further study if the witness had been compelled to testify against his will.

 If then upon a retrial of this cause it appears that the witness, Brown, has been granted immunity and he claims the privilege generally without alluding to his good faith, or truthfulness in his testimony at the criminal trial, he should be compelled to testify. But if he should indicate that his claim of privilege is based upon fear of prosecution for lack of good faith or truthfulness in such prior testimony, then he should not be compelled to testify. Neither this court nor the trial court, in a civil action, has jurisdiction to determine in finality if he has, by false testimony, lost his immunity from prosecution. See in this connection 98 C.J.S. Witnesses § 439, p. 262.

It has also been suggested that this witness may properly refuse to testify on the grounds that if he tells the truth in the instant action it will tend to establish that he is guilty of the crime of perjury in view of his prior false testimony. This is unsound. The privilege against self-incrimination relates to the compulsory disclosure of *facts* which form an essential part of a crime. Crum v. Brock, infra. If the witness Brown is forced to testify relative to the cause of the fire he will not be disclosing any facts which go to make up the crime of perjury. The same question could arise in any case where a witness was being cross-examined as to prior sworn statements. This identical issue was before the court in Crum v. Brock, 136 Miss. 858, 101 So. 704, wherein it was held in the fourth and fifth paragraphs of the syllabus as follows:

"A fact tending to criminate, which a witness may not be compelled to disclose, is a fact that would form a necessary and essential part of a crime.

"A witness who testified on a former trial to a fact that is no part of a crime, with the commission of which he could be charged, but who is afterwards indicted for perjury for so testifying, cannot, under .the rule against self-crimination, decline, on a subsequent trial of the case, to answer questions by which the testimony given by him on the former trial is sought to be elicited."

The judgment is reversed and the cause remanded for a new trial in accordance with the views herein expressed.

DAVISON, HALLEY, JOHNSON, WILLIAMS and CARLILE, JJ., concur.

CORN, V. C. J., and BLACKBIRD, J., dissent.