**J. L. SWINK, Appellant,**

v.

**William C. COLCORD, Appellee.**

**No. 5412.**

United States Court of Appeals
Tenth Circuit.

Dec. 11, 1956.

Paul Dudley, of Dudley, Duvall & Dudley, Oklahoma City, Okl. (John B. Dudley, Jr., Oklahoma City, Okl., was with him on the brief), for appellant.

Robert R. Cress, Tulsa, Okl. (Dean H. Smith, Tulsa, Okl., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought to recover damages resulting from a collision between two automobiles traveling in opposite directions on a highway in Oklahoma. The plaintiff contended that the driver of the defendant's car negligently made a left-hand turn in front of him, causing the collision. The defendant denied the negligence and alleged that the plaintiff was guilty of contributory negligence in driving his automobile at an excessive rate of speed on a wet and slippery road. The jury returned a verdict in favor of the plaintiff and judgment was entered thereon.

An Oklahoma Highway Patrolman investigated the collision within a short time after it happened. His qualifications as an expert in this field were admitted. He testified as to the point of impact between the two automobiles and as to their speed. For reversal the defendant relies solely upon the admissibility of this evidence.

The plaintiff testified that he was traveling in an easterly direction at a speed of from forty to forty-five miles per hour and was approaching a gradual curve to the left. At this point there was a gravel road continuing straight east from the main highway. A light rain was falling and the highway was wet. The defendant's car was observed, traveling in a westward direction, at about twenty to twenty-five miles per hour and was decreasing its speed. When about sixty feet from plaintiff's car, the driver of defendant's car made a left-hand turn immediately in front of the plaintiff's car which was unable to stop, and defendant's car was struck broad-

side in the east-bound lane of traffic. The highway patrolman testified that when he arrived the two automobiles were still there, the plaintiff's car partly on the pavement and the defendant's car in the ditch to the south of the pavement. He stated that he found that plaintiff's car had struck defendant's car near the right front door; he said the point of impact was on the south edge of the blacktop pavement; that he "determined the point of impact by the debris, physical evidence around the scene, and where some of the metal from one or both cars, or possibly one of the cars, dug into the blacktop". The patrolman was asked if there were any signs posted along the highway at that point which indicated that the pavement was slippery when wet. In answer to this question, he said: "No, there were none. Speed did not enter into it as far as my investigation was concerned". The last part of this answer was not responsive and no motion was made to strike it. The patrolman testified that with his training and experience he was able to determine approximately the rate of speed the vehicles were moving when the collision occurred. There were no skid marks and he stated that he could ascertain the speed from the distance they traveled after the impact and from the damage to the cars. The cars did not travel a great distance after the collision, even though the condition of the highway was slick and it was muddy off the pavement. He testified that there could not have been a great amount of speed involved or the damage to the automobiles would have been much greater. He did not, on direct examination, attempt to estimate the speed of either car. On cross-examination the defendant developed that the patrolman had determined that plaintiff's automobile, at the time of the impact, was traveling approximately forty to forty-five miles per hour, and the defendant's car approximately fifteen miles per hour.

The testimony of the driver of defendant's car was to the effect that he was proceeding west on the highway at about twenty miles per hour; that the highway was wet and slippery; that he saw plaintiff's car almost four hundred yards away and traveling at an estimated speed of sixty to sixty-five miles per hour; that he slowed down to about ten miles per hour and made a left-hand turn; that he saw plaintiff's car start to skid when it was about three hundred feet away. He stated that when he saw the car sliding toward him, he had crossed the pavement and was on the gravel and was struck by plaintiff's car when off the pavement slab. His testimony was that he later measured the skid marks made at the collision and that the right rear of his automobile was twenty-eight inches from the pavement "at the time of the impact". He estimated that the speed of plaintiff's car while he was sliding was fifty to fifty-five miles per hour. A passenger in defendant's automobile testified that he was taken to the hospital for emergency treatment after the collision and returned later that afternoon with the driver of the car and made an inspection there with respect to tracks and marks. He testified that "we found that at the point of impact, the car hit us, the rear wheels of the car we was in made slide marks" on the ground. He described the slide marks and stated that they were off the pavement, possibly a foot or eighteen inches.

The law is settled in Oklahoma that a highway patrolman who investigates an accident after it occurred, although an expert, may not give his opinion as to unequivocal conclusions to be drawn from the investigation. Any attempt to fix the responsibility for a collision or establish the ultimate fact of negligence by expert testimony is an invasion of the province of the jury. Washita Valley Grain Co. v. McElroy, Okl., 262 P.2d 133; Maben v. Lee, Okl., 260 P.2d 1064; Hadley v. Ross, 195 Okl. 89, 154 P.2d 939; Federal Oil & Gas Co. v. Campbell, 65 Okl. 49, 183 P. 894. It has, however, been held that a person who is especially qualified by skill or experience, may state an inference or

judgment as to matters connected with the management or operation of motor vehicles if the jury cannot fairly be expected to draw accurate, or as accurate conclusions for themselves. 20 Am.Jur., Evidence, § 817; Andrews v. Moery, 205 Okl. 635, 240 P.2d 447, 450. In the Andrews case it was stated that although it had been held that the opinion of an expert was inadmissible, "the weight of authority allows an expert to give his opinion as to speed based upon the length of skid marks". See 23 A.L.R.2d, Annotation, 141. We see no reason why this same rule would not apply if there were available factors other than skid marks from which a qualified expert might reliably approximate the speed of the vehicles. Oyster v. Dye, 7 Wash.2d 674, 110 P.2d 863, 133 A.L.R. 720, Annotation, 726.

██ We think, however, that it is not necessary in this case to determine the applicability of these rules, as it would appear that the testimony of the highway patrolman as to the speed was not prejudicial. He did not attempt to fix the speed of either car except on cross-examination, and there is no substantial conflict between his estimate of the speed and that of the plaintiff and the driver of defendant's car. The plaintiff and the highway patrolman estimated the speed of plaintiff's car at forty to forty-five miles per hour at the time of the collision; the driver of defendant's car estimated the speed at fifty to fifty-five miles per hour when it was skidding some distance away.

██ As to the point of impact, the highway patrolman testified that from the conditions which he found to exist after the collision, plaintiff's car struck the right side of defendant's car at a point near the south edge of the pavement, in the east-bound lane of traffic. He had seen the debris and marks on the pavement and observed other physical evidence there. The plaintiff's car, at the time of his investigation, was still on the pavement with its front wheels slightly off the south side. Defendant's car had continued almost straight ahead across the gravel road and had come to a stop in a ditch. The highway patrolman did not undertake to determine the responsibility for the collision. The defendant had two witnesses who observed the conditions, including the skid marks, and fixed the point of impact differently from that determined by the highway patrolman.[1] The testimony of these witnesses and the highway patrolman, in attempting to locate the point of impact, was little more than a description of what they observed, and was the direct import of what they saw. From these descriptions and other evidence, the jury was free to accept the evidence of the plaintiff or that of the defendant. 38 A.L.R. 2d, Annotation, 13. An examination of the entire record, which does not include the Court's instructions to the jury, discloses no prejudicial error.

Judgment affirmed.

---

1. In Oskison v. Bagby, 172 Okl. 569, 46 P. 2d 331, 333, quoting from Rock Island Coal Mining Co. v. Galvin, 96 Okl. 95, 220 P. 832, it was said: " 'A party cannot complain of the admission of evidence over his objection, where other evidence of the same tenor was admitted without objection' ".